```
                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                           )
                                 )      Chapter 7
Paul John Kramer                 )
                                 )      Bankruptcy No. 04-02900
        Debtor.                  )
```

**ORDER RE: DEBTOR'S PETITION AND/OR MOTION
FOR HEARING TO SHOW CAUSE
(MIDLAND CREDIT MANAGEMENT, WESTCH & ABBOTT, AND KEVIN ABBOTT)**

This matter came before the undersigned for hearing on February 1, 2005. Midland Credit Management, Inc. (Midland), the law firm of Wetsch & Abbott, P.L.C., and Kevin Abbott were represented by Kevin Abbott. Debtor Paul Kramer appeared pro se. After hearing the arguments of the parties, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

**FINDINGS OF FACT**

This matter represents the final installment in a series of hearings brought about by Mr. Kramer's "Petition and/or Motion for a hearing to Show Cause why the Below Named Persons are not in Contempt of Court for Intentional, Bad Faith Violations of the Automatic Stay." See Order Re: Jones County Treasurer, Docket No. 46 (Dec. 16, 2004); Order Re: Iowa Dep't of Revenue, Docket No. 45 (Dec. 16, 2004); Order Re: U.S. Dist. Court Cases C01-0170, C02-0181, Docket No. 43 (Dec. 14, 2004); Order Re: Dubuque County Cases EQVC 92852, 93721), Docket No. 42 (Dec. 13, 2004); Order Re: Dubuque County Traffic Citation, Docket No. 37 (Dec. 9, 2004).

Debtor filed a voluntary Chapter 7 petition on July 27, 2004. The record shows that Debtor made a number of errors in completing the address list for the mailing matrix which accompanied his petition. Most notably, Debtor placed a comma in every number greater than three digits, including "address numbers" that represented zip codes, post office boxes and street addresses. Many of the creditors charged by Debtor with violating the automatic stay have averred that they did not receive notice of his filing.

The Court notes that Debtor lists Midland as a creditor on Schedule F of his petition. The Certificate of Service shows that notice was sent by first class mail on July 29, 2004 to Midland at "Mildand Credit Manageinenrt., P.O. Box 939,019., San Diego California 92193-9019." Similar to the P.O. Box number, the zip code provided by Debtor also originally contained commas. However, the Certificate of Service states that, prior to mailing, the zip code was corrected and given the proper "zip+4" format. The notice to Midland was not returned as undeliverable. The Court finds that Midland received notice of Debtor's bankruptcy.

Debtor complains of Midland's attempts to collect on an account originally held by Fleet Bank (Fleet). Debtor opened a revolving consumer credit account with Fleet on July 12, 1990. Debtor defaulted on this account sometime after July 15, 2002. Fleet subsequently "charged-off" the account on February 28, 2003. Midland purchased the charged-off account from Fleet on May 5, 2004. At that time, Debtor's account had a balance of $10,646.48. On July 31, 2004, Midland, in an attempt to collect on Debtor's account, sent electronic correspondence to Wetsch & Abbott, a West Des Moines, Iowa law firm that it had previously employed for collection work. Mr. Abbott, an attorney at Wetsch & Abbott, stated that he received the correspondence on August 4, 2004, nine days after Debtor filed his July 27, 2004 voluntary Chapter 7 petition.

On August 6, 2004, Mr. Abbott sent a letter to Debtor stating that he was in default of his obligation to Midland in the amount of $10,646.48. The letter also provided Debtor (1) the opportunity to contest the validity of the debt and (2) the right to cure his default prior to September 7, 2004. Around September 10, Debtor contacted an employee of Wetsch & Abbott via telephone and disclaimed any liability for this obligation. Abbott asserts that Debtor made no mention of his bankruptcy filing during the course of the brief conversation. On September 16, 2004, Abbott filed a lawsuit in the district court for Dubuque County in an attempt to collect the $10,646.48.

Although the exact details surrounding the following event are unclear because of its decision not to appear and explain them in greater detail, Midland asserts that it received some type of notice regarding Debtor's bankruptcy filing on September 27, 2004. It further asserts that this was the first notice it received of Debtor's bankruptcy. Upon

2

receiving this notice, Midland notified Abbott of Debtor's bankruptcy and instructed him to immediately dismiss the lawsuit and to "close and return the account." Abbott complied with Midland's instructions and there have been no further attempts to collect this debt.

## CONCLUSIONS of LAW

### Violation of the Automatic Stay

A voluntary bankruptcy petition filed under § 301 of the Code imposes the automatic stay pursuant to § 362. The § 362 automatic stay "is among the most basic of debtor protections under bankruptcy law." In re Vierkant, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999). It prohibits any entity from taking action "to collect, assess, or recover a claim against the debtor that arose before the commencement of a case." 11 U.S.C. § 362(a)(6). The scope of the automatic stay is extremely broad. Vierkant, 240 B.R. at 321. It stops "all collection efforts, all harassment, and all foreclosure actions . . . and permits the debtor to be relieved of the financial pressures that drove him into bankruptcy." Id.; see also In re Lankford, 305 B.R. 297, 301 (Bankr. N.D. Iowa 2004) (citing H.R. 595, 95th Cong., 1st Sess. § 340-42 (1977)).

The automatic stay "operates without the necessity for judicial intervention" and springs into effect immediately upon the filing of a bankruptcy petition, regardless of whether parties to the proceeding "are aware that a petition has been filed." Vierkant, 240 B.R. at 321 (emphasis added). It is designed to protect debtors "while they attempt to regain their financial footing" by "prevent[ing] creditors from attempting in any way to collect a prepetition debt." Id.; In re Goodfellow, 298 B.R. 358, 360 (Bankr. N.D. Iowa 2003) (citing In re Grau, 172 B.R. 686, 690 (Bankr. S.D. Fla. 1994)). Because of its fundamental importance, "courts must display a certain rigor in reacting to violations of the automatic stay." Vierkant, 240 B.R. at 321.

Section 362(h) addresses sanctions for the violation of the automatic stay. It provides that:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and,

      in appropriate circumstances, may recover punitive
      damages.

In order to recover damages under § 362(h), a debtor must show (1) that it was injured by the violation of the stay and (2) that the violation was willful. <u>Lankford</u>, 305 B.R. at 302. A violation of the stay is "willful" where the violator's conduct is deliberate and with knowledge of the bankruptcy filing. <u>Id</u>. In imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances. <u>Hubbard v. Fleet Mortg. Co.</u>, 810 F.2d 778, 782 (8th Cir. 1987) (citing <u>United States v. United Mine Workers</u>, 330 U.S. 258, 303 (1947)).

      The court may award punitive damages under § 362(h) only where the action taken is "egregious, intentional misconduct on the violator's part." <u>In re Ketelson</u>, 880 F.2d 990, 993 (8th Cir. 1989). The creditor's status as a sophisticated player in the credit industry can be relevant when considering whether to award punitive damages. <u>Lankford</u>, 305 B.R. at 302. In an action for violation of the automatic stay, the moving party bears the burden of proof and must prove its case by a preponderance of the evidence. <u>In re Westman</u>, 300 B.R. 338, 342 (Bankr. D. Minn. Oct. 24, 2003) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991)).

### Principal and Agent Relationship

      An agency in Iowa is a consensual relationship in which one person acts on behalf of another and subject to their control. <u>Miller v. Chatsworth Sav. Bank</u>, 212 N.W. 722, 723 (1927). Law firms engaged by creditors to perform debt collection services are generally regarded as agents of the creditor. <u>See</u> <u>In re Waswick</u>, 212 B.R. 350, 353 (Bankr. D.N.D. 1997); <u>In re Siharath</u>, 285 B.R. 299, 304 (Bankr. D. Minn. 2002).

      Under the rule of agency, knowledge and actions of the agent are imputed to the principal because "it is presumed that the agent will perform its duty and communicate to his principal the facts that the agent acquires while acting within the scope of the agency relationship." <u>Siharath</u>, 212 B.R. at 353; <u>see also</u> <u>Jacobson v. Federal Deposit Ins. Corp.</u>, 407 F. Supp. 821, 825 (S.D. Iowa 1976); <u>Emmons v. Ingebretson</u>, 279 F. Supp. 558, 571 (N.D. Iowa 1968). However, this principle does not operate in the converse. <u>Id</u>. An

"agent cannot be imputed with the information which its principal has failed to give it." <u>Siharath</u>, 212 B.R. at 353. An agent employed for collection work does not have an affirmative duty to perform an independent investigation to determine whether a debtor has filed for bankruptcy protection. <u>Waswick</u>, 212 B.R. at 353.

The Eighth Circuit holds that "it is well settled that an agent may rely upon the representations of his principal and that the principal's undisclosed knowledge is not imputed to him." <u>S.O.G.-San Ore-Gardner v. Missouri Pacific R.R. Co.</u>, 658 F.2d 562, 567 (8th Cir. 1981).

## ANALYSIS

By attempting to collect a pre-petition debt after Debtor's July 27, 2004 Chapter 7 filing, Midland, Kevin Abbott, and Wetsch & Abbott have violated the § 362(a) automatic stay. The Court finds that Midland received the notice of Debtor's bankruptcy which was mailed on July 29, 2004. Neither Kevin Abbott nor the law firm of Wetsch & Abbott had actual or constructive notice of the filing until September 27, 2004. Because they lacked actual or constructive notice of Debtor's bankruptcy filing, the conduct of Kevin Abbott and Wetsch & Abbott does not rise to the level required for a willful violation under § 362(h).

As agents for Midland, Mr. Abbott and Wetsch & Abbott cannot be imputed with information which the principal, Midland, has failed to give them. Midland did not notify Abbott and Wetsch & Abbott of Debtor's Chapter 7 filing until September 27, 2004. Applying the foregoing legal principles and facts, Midland is the only party in this action which had notice of the case and was in the position to willfully violate the automatic stay. Neither Abbott nor the law firm with which he is affiliated are responsible for damages to Debtor for their stay violations.

Midland received the notice of Debtor's Chapter 7 petition mailed on July 29, 2004. As that notice was sent via first class mail, Midland likely received it after sending its correspondence to Wetsch & Abbott on July 31, 2004. The specific timing of these two events, however, has no bearing on whether Midland's violations of the automatic stay were willful. The actions of (1) sending the August 6 letter to Debtor and (2) initiating the lawsuit in Dubuque County on

5

September 16, which are imputed to Midland through its relationship with Wetsch & Abbott, were taken after the July 29 mailed notice. These two actions establish a breach of the automatic stay and, since they were taken after Midland received notice, they were undertaken willfully.

Debtor testified that he was harmed by Midland's post-petition collection efforts, specifically, through its filing of the action in Dubuque County. The Court agrees with Debtor's contentions. Debtor is entitled to an award of actual damages in the amount specified below.

**WHEREFORE**, Debtor's Motion for Sanctions against Midland Credit Management is GRANTED.

**FURTHER**, Debtor's Motion for Sanctions against Kevin Abbott and Wetsch & Abbott, P.L.C. is DENIED.

**FURTHER**, the Court finds that Debtor Paul Kramer has established by a preponderance of the evidence that Midland willfully violated the § 362(a) automatic stay and is, therefore, subject to sanctions pursuant to § 362(h).

**FURTHER**, the Court awards Debtor actual damages in an amount of $500.

**FURTHER**, judgment shall enter in favor of Debtor Paul John Kramer and against Midland Credit Management, Inc. in the foregoing amount.

Dated and Entered  February 23, 2005.

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE